UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS

                                    )
JAMES SPINNATO,                     )
                                    )
         Plaintiff,                 )
                                    )
      v.                            )      CIVIL NO. 14-12443-PBS
                                    )
MARTIN C. GOLDMAN,                  )
                                    )
         Defendant.                 )
                                    )
                                    )

                       **MEMORANDUM AND ORDER**

                         December 19, 2014

SARIS, Chief Judge.

   Plaintiff James Spinnato is the heir and former co-executor of the estate of Winnie Ansin, an elderly widow he befriended more than a decade before her death. Martin C. Goldman was Ansin's estate attorney and is currently the co-executor of her estate. Spinnato alleges that Goldman encouraged Ansin's relatives to file suit against him for undue influence, despite repeatedly assuring Spinnato that Ansin's estate planning documents were valid and his relationship with her was proper. Spinnato asserts claims for breach of fiduciary duties, fraudulent misrepresentation, tortious interference with the expectancy of a gift, and contribution. He seeks $300,000 in damages. Goldman has moved to dismiss. After a hearing, the motion to dismiss is **ALLOWED** in part and **DENIED** in part.

                                   1

**ALLEGED FACTS**

The complaint alleges the following facts, some of which are disputed.

**I. Estate Planning of Winnie Ansin**

Winnie R. Ansin, a Massachusetts widow, was a client of Goldman's from about 1995 until her death in 2011. Goldman, who resides in Massachusetts, is an attorney with a practice focusing on probate and estate administration. Goldman prepared a Last Will and Testament for Ansin, which she signed and he notarized on August 29, 1995. The heirs listed in that will were Runnae Spriggs, Kathy Cash, Patti Harrison, Sydney Marie Cash, Charles Waldrop, Harold Cash, James Cash, and David Cash. All were Ansin's distant relatives, and all but Waldrop lived in Texas and did not regularly see or contact Ansin during the last twenty years of her life.

Spinnato, who resides in New Hampshire, met Ansin in 1998, and they became friends soon afterward. Both considered the relationship akin to mother and son, and they would remain friends until Ansin's death. The two frequently met for coffee and regularly shared meals, and Spinnato sometimes ran errands for Ansin such as grocery shopping. Around April 2000, Ansin moved to Brooksby Village, an assisted living facility in Peabody, Massachusetts, with Spinnato's help.

Ansin introduced Spinnato to Goldman, her estate planning

attorney, in 2005. Spinnato and Goldman met each other five or six times over the years, and Goldman was always cordial and stated his belief that Spinnato was Ansin's best friend. He never mentioned believing that their relationship was improper. Goldman told Spinnato that Ansin had expressed a wish to give Spinnato the bulk of her assets either upon her death or prior to it through the use of joint accounts, and indicated that he approved of Ansin's plan.

In 2006, Ansin sought Goldman's services to change her estate plan to reflect her relationship with Spinnato. On March 29, 2006, she executed a First Codicil to her will and a Durable Power of Attorney in favor of Spinnato. Goldman drafted and notarized both documents. The codicil made Spinnato and Goldman co-executors of Ansin's estate, and made Spinnato a major heir of the estate. The codicil changed several bequests, including providing that Spinnato and another friend of Ansin's, Josephine Pucillo, would receive the $200,000 apartment deposit Ansin had given to Brooksby Village. Goldman told Spinnato that both documents reflected Ansin's true intent, and never suggested that Ansin was incompetent or subject to undue influence. Subsequently, Ansin and Spinnato relied on Goldman's representations about the validity of the documents to conduct their estate and long-term financial planning.

Beginning in May 2007, with the advice and assistance of

legal counsel, her financial adviser, and a social worker at Brooksby Village, Ansin began the process of transferring four assets to Spinnato outside of probate: the Brooksby Village deposit, a Salem Five account, an Eastern Bank account, and a Hartford Annuity/UBS Investment account. Ansin made Spinnato a joint owner of the two bank accounts, and executed a transfer-on-death agreement for the UBS investment account instructing that upon her death Waldrop should receive 30 percent of the account and Spinnato should receive 70 percent. The transfers were executed with the proper formalities.

On January 24, 2008, Ansin executed a Second Codicil to her will which made Spinnato the sole beneficiary of the Brooksby Village deposit and removed Pucillo as a beneficiary. Goldman drafted and notarized the codicil, and indicated that there was nothing improper about the change. He was also aware of the transfer agreements that had been executed for the Salem Five and Eastern Bank accounts, and indicated to Spinnato and Ansin that those transfers were legal and proper.

Between 2008 and 2011, Spinnato and Ansin continued their friendship, and Goldman occasionally checked in with Ansin regarding her estate planning. No further changes were made to her will.

**II. Probate and Dispute with Texas Heirs**

Ansin died on March 26, 2011. Spinnato informed Goldman of

Ansin's death, and Goldman said that he would handle the probate of the estate. Goldman encouraged Spinnato to hire Betsy Rooks as the estate attorney, but did not disclose that Rooks is his daughter. Spinnato hired her, and paid the requested retainer.

On April 26, 2011, Rooks filed with the Probate Court a petition for Probate of the Will, Bond of Executors, and the Will with Codicils. She represented that the will and codicils were valid documents, and informed the court that the estate was worth less than $50,000 because of the assets that had already been properly transferred outside of probate. On July 7, 2011, Rooks informed the Probate Court that all interested parties, including Ansin's heirs in Texas, had received notice of the petition for probate and had not objected. The court approved the will and codicils, and the appointment of Goldman and Spinnato as co-executors, on October 25, 2011.

Unbeknownst to Spinnato, shortly after Ansin's death Goldman contacted her Texas relatives and alleged that Spinnato wrongfully transferred Ansin's assets away from them outside of probate when Ansin was either incompetent or subject to Spinnato's undue influence. Goldman also put the Texas relatives in contact with a Massachusetts attorney who could help them prepare a case against Spinnato for undue influence. Goldman assisted the Texas heirs and their attorneys in preparing their case by using his position as co-executor to obtain documents

5

from UBS, Salem Five, and Eastern Bank, and sharing those documents with them. Goldman told them that the value of Ansin's estate actually exceeded $1 million. During this period, Goldman took no action to close the estate, and did not disclose to Spinnato any of his communications with the Texas heirs.

In May 2012, the Texas heirs filed suit against Spinnato in the Superior Court of Massachusetts, alleging that he had instigated the transfer of the UBS, Salem Five, and Eastern Bank accounts and the Brooksby Village deposit via undue influence. In the litigation, Goldman signed an affidavit setting forth facts which supported the heirs' claim. In a deposition, he initially testified that he "didn't think [Ansin] was under duress" from Spinnato, but on the following day he stated: "I thought she was under undue influence from the day I met Mr. Spinnato." Goldman also made statements suggesting Ansin was not competent to execute the legal documents that transferred her assets to Spinnato. Other witnesses in the case, such as Waldrop, Ansin's physician, her social worker, and her friends from Brooksby Village, testified that they believed Ansin was competent to make her own decisions and that they never observed her to be under any duress from her relationship with Spinnato.

As a result of the information Goldman provided to the heirs, which independently corroborated the claim of undue influence, Spinnato was unable to secure dismissal of the suit

against him and instead opted for mediation. He agreed to a settlement in which he would pay a portion of the non-probate assets to the Texas heirs. He states that but for Goldman's conduct, he would not have had to settle the case for any amount.

Spinnato filed suit against Goldman alleging breach of fiduciary duty, fraudulent misrepresentation, and tortious interference with the expectancy of a gift.[1] Spinnato also seeks contribution for a portion of the amount he paid to settle the Texas heirs' undue influence suit. He alleges $300,000 in damages. Goldman has moved to dismiss all of Spinnato's claims.

### STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient facts which "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Dismissal for failure to state a claim is appropriate where the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v.

---

[1] Spinnato also filed a malpractice claim against Betsy Rooks, but the parties settled shortly after a hearing on Rooks's motion to dismiss.

Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Typically on a motion to dismiss, the deciding court cannot consider information outside the four corners of the complaint. See Watterson, 987 F.2d at 3. The First Circuit recognizes "narrow exceptions" to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint." Id.

## DISCUSSION

### I. Breach of Fiduciary Duty

Spinnato argues that Goldman owed him fiduciary duties in his roles as both a co-executor and an heir of Ansin's estate. Spinnato contends that Goldman violated those duties in three ways: 1) during Ansin's life, by failing to disclose to Spinnato his belief that Ansin's estate planning documents and outside probate transfers were invalid due to undue influence; 2) as co-executor of the estate after Ansin's death, by failing to disclose to Spinnato that he was communicating with the banks and the Texas heirs to aid in their filing of an undue influence claim; and 3) during the Texas heirs' undue influence suit, by falsely testifying that Ansin had been subject to undue influence when she transferred her assets to Spinnato. Whether Goldman owed

8

any fiduciary duties to Spinnato when he took each of these actions depends upon the legal relationship between the two individuals at the relevant times. Because the nature of their relationship shifted over time, the Court will address each permutation in turn.

**A. Goldman as Ansin's Attorney, Spinnato as Potential Heir**

While Ansin was alive and conducting her estate planning, Goldman was solely her attorney and had no attorney-client relationship with Spinnato. During Ansin's life, Spinnato's only status was that of a potential heir to her estate. In Massachusetts, "an attorney is not absolutely insulated from liability to nonclients. [A]n attorney owes a duty to nonclients who the attorney knows will rely on the services rendered." Spinner v. Nutt, 417 Mass. 549, 552 (1994) (internal quotation marks omitted), quoting Page v. Frazier, 388 Mass. 55, 65 (1983) and Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 (1989). However, "where an attorney is also under an independent and potentially conflicting duty to a client, we are less likely to impose a duty to nonclients." Spinner, 417 Mass. at 552 (internal quotation marks omitted), quoting Page, 388 Mass. at 63.

Because of the potential for conflicting interests, testators' attorneys do not owe a duty to prospective beneficiaries when drafting a will. See Miller v. Mooney, 431

9

Mass. 57, 64 (2000). In Miller, the children and heirs of a decedent sought to sue their mother's estate attorney for legal malpractice, breach of contract, and negligent misrepresentation "based on erroneous statements he made during their mother's lifetime regarding the terms of her will." Id. at 57-58. The court stated that "[i]n preparing an estate plan and distributing property, either through a will or through inter vivos trusts, attorneys can have only one client to whom they owe a duty of undivided loyalty." Id. at 62 (internal quotation marks omitted), quoting Symmons v. O'Keeffe, 419 Mass. 288, 200 (1995). Assessing the negligent misrepresentation claim, the court reasoned that "[i]f a duty arose as to every prospective beneficiary mentioned by the client, . . . [a]ttorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity." Miller, 431 Mass. at 64. Accordingly, "[t]he nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries." Id., citing Logotheti v. Gordon, 414 Mass. 308, 312 (1993) (holding that duty runs to testator, not to heirs at law); cf. Spinner, 417 Mass. at 553 (holding that a trustee's attorney does not owe a duty of care to trust beneficiaries in advising the trustee).

 Like the plaintiffs in Miller, while Ansin was alive Spinnato had no personal attorney-client relationship with

Goldman, and was merely a prospective heir of her estate. Goldman did not owe him any fiduciary duties in this capacity because he owed an undivided duty of loyalty to Ansin and the imposition of duties to Spinnato would have created the possibility of conflict. Although Spinnato argues that no conflict existed because both he and Ansin wanted her will effectuated, the Supreme Judicial Court has stated that "it is the potential for conflict that prevents the imposition of a duty . . . . [A]n isolated instance [of] identity of interests between [the attorney's client and the nonclients] would not support the imposition of a duty." Spinner, 417 Mass. at 554. Consequently, Goldman's failure to disclose his concerns about undue influence to Spinnato during Ansin's life cannot support a claim for breach of fiduciary duty.

**B. Goldman as Co-executor and Spinnato as Co-executor and Heir**

Spinnato asserts that Goldman's actions after Ansin's death - the failure to disclose communications with the Texas heirs, and falsely testifying in their suit that Spinnato unduly influenced Ansin's estate planning - violated fiduciary duties owed to Spinnato as both a co-executor and an heir of the estate. There is no support for the argument that the relationship between two co-executors gives rise to fiduciary duties. Co-executors owe duties not to one another, but to the estate itself

11

and its beneficiaries. See Alford v. Thibault, 83 Mass. App. Ct. 822, 824 n.2 (2013) ("An executor owes a fiduciary duty to the beneficiaries of an estate."); Onanian v. Leggat, 2 Mass. App. Ct. 623, 625 (1974) ("The fiduciary duty of an executor . . . is owed to and enforceable by the beneficiaries of the estate . . . ."); see also Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass. App. Ct. 412, 443 (1980) (describing the executor-legatee relationship as "strictly fiduciary").

As co-executor, Goldman did owe fiduciary duties to Spinnato as an heir. "[A] fiduciary owes a duty of full disclosure to his or her principal . . . ." Passatempo v. McMenimen, 461 Mass. 279, 294 (2012). Specifically, a fiduciary must disclose to his principal "information which is relevant to affairs entrusted to him and which . . . the principal would desire to have." Gagnon v. Coombs, 39 Mass. App. Ct. 144, 156 (1995), quoting Restatement (Second) of Agency § 381. As an heir to Ansin's estate whose rights might be affected if her estate planning documents were found to be invalid, Spinnato would have wanted to know that Goldman contacted the Texas heirs to allege undue influence and encourage them to file a lawsuit. Goldman's failure to disclose such information to Spinnato violated his fiduciary duty of full disclosure as co-executor of Ansin's estate. Accordingly, Spinnato has stated a plausible claim against Goldman based on the alleged facts.

However, to the extent that one of Spinnato's claims for breach of fiduciary duty rests on Goldman's testimony during the undue influence suit, the claim is not viable. The complaint alleges that Goldman breached his fiduciary duties to Spinnato during the Texas heirs' lawsuit by changing his testimony from the first day of the deposition to the second day, falsely stating that he believed Ansin had been unduly influenced. Under Massachusetts law, "communications made in the institution or conduct of litigation or in conferences and other communications preliminary to litigation are subject to absolute privilege," and cannot form the basis for a civil action against the speaker. Frazier v. Bailey, 957 F.2d 920, 932 (1st Cir. 1992) (internal quotation marks omitted), citing Sullivan v. Birmingham, 11 Mass. App. Ct. 359, 367-68 (1981) (holding that although the privilege originated from policy concerns about defamation claims based on statements made in the course of litigation, it applies to all causes of action). Goldman's testimony is protected by the absolute witness privilege, and thus cannot form the basis of Spinnato's claim against him.

Goldman's motion to dismiss is **ALLOWED** with respect to the alleged breaches of fiduciary duty predicated either on his testimony or on actions taken during Ansin's life. The motion is **DENIED** with respect to actions taken as co-executor of Ansin's estate, in relation to Spinnato as an heir of that estate.

**II. Fraudulent Misrepresentation**

Spinnato alleges that Goldman made affirmative, fraudulent misrepresentations to him during Ansin's life when he stated his belief in the validity of the estate planning documents which made Spinnato an heir and of Ansin's outside probate transfers to Spinnato. Spinnato also contends that after Ansin's death, Goldman fraudulently misrepresented his intent to have the will and codicils probated as written.

Under Massachusetts law, to state a claim for fraudulent misrepresentation a plaintiff must show that "(i) the defendant[] made a false representation of material fact with knowledge of its falsity for the purpose of inducing him to act thereon, (ii) [the plaintiff] relied upon the representation as true and acted upon it to his detriment, and (iii) that his reliance was reasonable under the circumstances." Rodi v. Southern New England School of Law, 532 F.3d 11, 15 (1st Cir. 2008), citing Masingill v. EMC Corp., 449 Mass. 532, 540 (2007).

The complaint sufficiently alleges each element of fraudulent misrepresentation. Goldman stated in his deposition during the Texas heirs' lawsuit that he believed that Ansin was under undue influence "from the moment [he] met Mr. Spinnato." Consequently, Spinnato argues that Goldman's representations to Spinnato about the validity of Ansin's estate planning documents and asset transfers to Spinnato must have been knowing

falsehoods. Similarly, Spinnato contends that Goldman's statement that he intended to have the will probated as written was demonstrated to be false when he contacted the Texas heirs to encourage an undue influence suit after Ansin's death. The alleged facts permit the reasonable inference that Goldman intentionally made those false statements. Spinnato alleges he detrimentally relied upon Goldman's misrepresentations by organizing his long-term financial planning based upon them. Additionally, Goldman's statements allegedly led Spinnato to forbear taking action to dispel concerns about undue influence and avoid the Texas heirs' lawsuit, or otherwise to ensure the validity and successful probate of Ansin's estate planning documents.

Goldman argues that he did not owe Spinnato a duty of care with respect to any statements about the estate planning documents and asset transfers. In Miller, a court found that the beneficiaries to an estate could not sue the decedent's attorney for negligent misrepresentations made during the decedent's life because the attorney did not owe the beneficiaries a duty of care. Miller, 431 Mass. at 64. However, here Spinnato does not allege negligence, but rather claims that Goldman committed the intentional tort of fraudulent misrepresentation. Though the law is unsettled in this area, no case law indicates that a prospective beneficiary cannot assert a claim for fraudulent

misrepresentation against a decedent's attorney. Further, after Ansin died, Goldman allegedly expressed his intent to pursue the probate of her estate as written in the will and codicils. "[S]tatements of present intention as to future conduct may be the basis for a fraud action if . . . the statements misrepresent the <u>actual intention</u> of the speaker and were relied upon by the recipient to his damage." <u>Zhang v. Massachusetts Institute of Technology</u>, 46 Mass. App. Ct. 597, 606 (1963) (alteration in original), citing <u>Barrett Assocs., Inc., v. Aronson</u>, 346 Mass. 150, 152 (1963); <u>see also</u> Restatement (Second) of Torts § 530.

Goldman's motion to dismiss is **DENIED** with respect to the fraudulent misrepresentation claim.

**III. Tortious Interference with the Expectancy of a Gift**

Spinnato contends that Goldman tortiously interfered with his expected inheritance from Ansin by creating estate planning documents during Ansin's life and later undermining those documents by encouraging the Texas heirs to sue Spinnato for undue influence. Neither party briefed the claim. A claim for tortious interference with the expectancy of a gift has three elements: 1) "[t]he defendant must intentionally interfere with the plaintiff's expectancy in an unlawful way"; 2) "[t]he plaintiff must have a legally protected interest"; and 3) "[t]he plaintiff must show that the defendant's interference acted continuously on the donor until the time the expectancy would

have been realized." Labonte v. Giordano, 426 Mass. 319, 320-21 (1997). Unlawful interference "include[s] duress, fraud, or undue influence." Id. at 321 n.4.

Massachusetts case law on this tort is scarce, but one case is roughly analogous to the facts at issue here: In Lewis v. Corbin, the defendant fraudulently induced a testatrix to execute a codicil to her will with only one witness, rendering it void. 195 Mass. 520, 523 (1907). The codicil was intended to give a legacy to the plaintiff, who subsequently sued the defendant in tort. Id. The court held that the testatrix "was fraudulently induced [by the defendant] to express [her donative intent] ineffectually, when she supposed that she had made a legal and valid codicil. Plainly such fraudulent conduct was a wrong upon the plaintiff as well as upon the testatrix." Id. at 525; cf. Sacramone v. Cranney, 61 Mass. App. Ct. 1106, at *1 (2004) (unpublished) (affirming grant of summary judgment for defendant lawyer accused of tortious interference in part because there was no evidence he encouraged the testator to incorporate informal mechanisms into her estate plan that he as a lawyer knew were unenforceable, in breach of his fiduciary relationship with her). As alleged in the complaint, during Ansin's life, Goldman interfered with her intent to include Spinnato in her will by fraudulently executing changes to her estate plan that were favorable to Spinnato despite his existing concerns about undue

influence, which he only surfaced after her death. Given the lack of briefing, in light of these allegations the Court **DENIES** the motion to dismiss the tortious interference claim at this stage of the litigation.

## IV. Contribution

Spinnato seeks contribution from Goldman for a portion of the money he paid to the Texas heirs under the settlement agreement. Spinnato argues that if Goldman truly believed Ansin to be subject to undue influence and nevertheless executed the estate planning documents that made Spinnato an heir, then Goldman is a joint tortfeasor in the alleged undue influence. As such, Spinnato contends that Goldman is liable to him in contribution for the settlement of the undue influence lawsuit. The court may consider the contents of the settlement agreement to decide Goldman's motion to dismiss because the document is referred to in the complaint and is central to Spinnato's claim. Watterson, 987 F.2d at 3.

Mass. Gen. Laws ch. 231B § 1(a) provides that joint tortfeasors have "a right of contribution among them even though judgment has not been recovered against all or any of them." Where a tort claim has been resolved by a settlement payment from one tortfeasor, rather than by a judgment, "his right of contribution shall be barred unless he has either (1) discharged by payment the common liability . . ., or (2) agreed while action

is pending against him to discharge the common liability and has within one year after the agreement paid the liability . . . ." Id. at § 3(d). The settlement agreement must expressly discharge the liability against all tortfeasors from whom the settling tortfeasor will seek contribution. See Med. Prof'l Mut. Ins. Co. v. Breon Laboratories, Inc., 966 F. Supp. 120, 124-25 (D. Mass. 1997) (holding that plaintiff was barred from seeking contribution from Breon for settlement of negligence claim because the settlement agreement did not expressly refer to Breon, and thus did not discharge Breon's liability), citing Mass. Gen. Laws ch. 231B § 4 ("When a release or covenant not to sue . . . is given in good faith to one of two or more persons liable in tort for the same injury, [i]t shall not discharge any of the other tortfeasors from liability unless its terms so provide.").

The settlement agreement does not purport to discharge any liability against Goldman. On behalf of Kathy Cash and the other Texas heirs, the agreement states that it "hereby release[s] and forever discharge[s] James Spinnato . . . Individually and as Co-Executor of the Estate of Winnie R. Ansin and as Co-Trustee of the Winnie Ansin Family Trust . . . and all of his attorneys . . . his agents, insurers, and employers . . . from all" liability for any claims they had against him, including those in the undue influence litigation. Dkt. 25, Ex. D. There is no mention of

19

Goldman in the release provision, and no suggestion anywhere in the agreement that the Texas heirs considered him a joint tortfeasor with Spinnato. Because a claim for contribution by a joint tortfeasor is barred unless a judgment or settlement has discharged the common liability, which has not occurred here, Goldman's motion to dismiss Spinnato's contribution claim is **ALLOWED**.

## ORDER

For the foregoing reasons, the defendant Goldman's motion to dismiss (Docket No. 13) is **ALLOWED** in part with respect to the claims for contribution and breach of fiduciary duties while serving as Ansin's attorney and while testifying in the undue influence suit. The motion to dismiss is otherwise **DENIED**.

                                         /s/ Patti B. Saris
                                         Patti B. Saris
                                         Chief United States District Judge